IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CON-WAY TRANSPORTATION, SERVICES, INC., | : : | Case No. 4:03-cv-0374 |
| Plaintiff, | : : | Judge Jones |
| | : : : | |
| REGSCAN, INC., | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

March 9, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law ("the Motion")(doc. 127) filed on December 22, 2005. At the close of the Plaintiff's case-in-chief the Defendant RegScan ("Defendant" or 'RegScan") made an oral motion under Fed. R. Civ. P. 50(a)(1) for judgment as a matter of law. Thereafter, RegScan orally renewed its Rule 50(a)(1) motion at the close of all evidence and before the action was submitted to the jury. At both times the oral motions were denied.

The instant Motion (doc. 127) has been fully briefed by the parties and is therefore ripe for our review. For the following reasons, the Motion (doc. 127) will be denied.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**:

On December 6 and 7, 2005, this case was tried to a jury. On December 8, 2005, the jury returned a partial verdict in favor of the Plaintiff Conway ("Plaintiff" or "Conway"). The answers to interrogatories submitted to the jury reflect that the jury's verdict in favor of Conway was based on finding a breach of contract by RegScan for royalties due Conway on sales of the HazMat Manager/Loader program. On December 8, 2005, this Court entered judgment on the jury verdict in the amount of $36,100.64. This figure was based on 32% of the gross sales of the Hazmat Manager/Loader, less a credit for fees already paid to Conway by RegScan.

At trial, Conway claimed that RegScan breached the Licensing Agreement (the "Agreement") between them by failing to pay Conway licensing fees due it under Paragraph 7(a) of the Agreement. Pursuant to the Agreement, RegScan was to pay Conway, "[a]n amount equal to 32% of the gross revenue received by RegScan from the sale or use of the Product from any source . . ." "Product" is defined in the Agreement as a commercial implementation of the "Program." The Agreement defines "Program" as a software program that, in response to stored regulatory information and user input, generates data corresponding to required placarding, labeling, and load segregation for the shipment of hazardous materials.

Robert Petrancosta ("Petrancosta"), an employee of Conway, designed a concept that Conway referred to as the "HazCalc" program. In 1999, after Conway decided not to use HazCalc internally for its own business purposes, Conway representatives met with RegScan officials to discuss RegScan's development of HazCalc into a commercial implementation. Prior to the signing of the Agreement, RegScan officials were in possession of the program, and after running the program, were aware that HazCalc was "pretty unworkable as a useful program," and that "the design objectives were fairly loosely structured." Thereafter, on May 3, 2000, the Agreement was entered into between the Plaintiff and Defendant.

At trial, Petrancosta gave detailed testimony about his interaction with RegScan employees indicating the existence of a combined effort between Plaintiff and Defendant to develop HazCalc into a commercially viable computer software program. RegScan ultimately developed HazCalc into what became known first as "HazMat Manager," and later as "HazMat Loader." RegScan acknowledged that it had not contemplated creating a computer software program like HazMat Manager/Loader until it viewed HazCalc and entered into the Agreement with Conway. Moreover, RegScan did not begin developing HazMat Manager/Loader until after it entered into the Agreement on May 3, 2000.

In 2001, RegScan began selling HazMat Loader[1] to law enforcement agencies and private entities.  To date, RegScan continues to sell and market HazMat Loader.  Pursuant to the Agreement, RegScan made the first two required royalty payments to Conway, in the total amount of $3,420.00.  RegScan then stopped making payments to Conway, alleging that the Agreement was no longer binding.  RegScan's failure to pay Conway royalty payments ultimately resulted in Conway's filing the instant action before this Court.

**STANDARD OF REVIEW**:

In deciding a renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), the trial court must "view the evidence in the light most favorable to the non-moving party . . . and determine whether 'the record contains the minimum quantum of evidence from which a jury might reasonably afford relief.'" Keith v. Truck Stops Corp., 909 F.2d 743, 745 (3d Cir. 1990)(citations omitted).  In accomplishing this task, the trial court is "not free to weigh the evidence, pass on the credibility of [witnesses], or substitute [its] judgment of the facts for that of the jury." Blair v. Manhattan Life Ins. Co., 692 F.2d 296, 300 (3d Cir. 1982).  Essentially, our task is to determine whether "the record is critically deficient of the minimum quantum of evidence" upon which a reasonable jury

---

[1] Presently the program is marketed as "HazMat Loader."

could grant relief.  Id.

**DISCUSSION**:

In this case, Plaintiff bore the burden of proving that Defendant breached the Agreement.  A breach of contract occurs when a party to the contract fails to perform his duty under the contract or violates an obligation or duty, and where that breach is material.  See Connolly, Epstein, Chicco, Foxman, Engelmyer & Ewing v. Fanslow, 1995 U.S. Dist. LEXIS 17231, *10-11 (E.D. Pa. 1995). A breach does not have to be defined in a contract; and in  making its determination as to whether the Agreement was breached, a jury is to examine the terms and conditions of the Agreement, as well as the conduct of the parties.

In this case, before  determining whether a material breach of the Agreement occurred, the jury must have first determined whether HazMat Manager/Loader, developed by RegScan after May 3, 2000, was considered a "Product" under the Agreement.  To make that determination, the jury was tasked to discern the intent of the parties.  It clearly did this by analyzing the text of the Agreement and the conduct of the parties in this case.  By returning a verdict in favor of the Plaintiff and in answering the special interrogatories, the jury unquestionably indicated that it found HazMat Manager/Loader was a "Product" under the Agreement, and that RegScan materially breached the Agreement by discontinuing royalty payments to

Conway.[2] There was ample evidence presented at trial in support of this conclusion.

It is our opinion that, viewing all of the evidence in the light most favorable to the Plaintiff, as we are required to do by Fed. R. Civ. P. 50(b), a reasonable jury could have concluded that RegScan breached the Agreement by failing to pay Conway royalties in the amount of 32% of the gross revenue from the sales of HazMat Manager/Loader. Our reasons for this determination are several, and we will now proceed to describe them in greater detail.

First, we find that a reasonable jury could easily have concluded that HazMat Manger/Loader was a "Product" pursuant to the Agreement. The testimony at trial indicated that HazMat Manager/Loader was a computer software program derived from HazCalc. Both computer software programs generated data for trucking placarding of hazardous materials based on user input. To be sure, HazMat Manager/Loader was a more sophisticated and capable program than HazCalc, however from viewing the totality of the circumstances surrounding the development of HazMat Manager/Loader, a jury could have reasonably found HazMat Manager/Loader to be a "Product" as defined by the Agreement.

---

[2] On the verdict form, the jury indicated it found RegScan breached the Agreement with respect to Hazmat Loader/Manager only. (Rec. Doc. 123).

Next, RegScan admitted at trial that it had not contemplated the idea for HazMat Manager/Loader until after it viewed HazCalc, nor did it begin development of HazMat Manager/Loader until after entering into the Agreement in May, 2000. RegScan's development of HazMat Manager/Loader was largely influenced and aided by the input of Petrancosta, a Conway employee.  Further, RegScan's payment to Conway two royalty payments amounting to 32% of the gross sales of HazMat Manager/Loader provided evidence that RegScan itself considered HazMat Manager/Loader to be, at least for some period of time, a "Product" as defined by the Agreement.

To be sure, RegScan endeavored to convince the jury that its development of HazMat Manager/Loader was so distinct from HazCalc that RegScan's performance under the Agreement in the form of royalty payments should be excused.  Indeed, this was a winning argument as to the other software for which Conway sought recompense; however, we cannot find that the distinction the jury made as to HazMat Manager/Loader was unreasonable.  The Agreement itself was less than clear on these points, and we perceived that the jury labored mightily as well as appropriately in reaching its verdict.  At bottom, it is our belief that the jury had more than the "minimum quantum" of evidence upon which it could render the judgment that it did.  To rule otherwise would clearly be an impermissible

substitution of our judgment in place of that of the jury.

**CONCLUSION**:

In light of the foregoing, we will not disturb the jury's verdict. Accordingly, the Motion (doc. 127) will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Renewed Motion for Judgment as a Matter of Law (doc. 127) is DENIED.

s/ John E. Jones III
John E. Jones III
United States District Court